WHITEFORD PLASTICS CO., Inc. v. CHASE NATIONAL BANK OF NEW YORK CITY.

No. 66, Docket 21432.

United States Court of Appeals Second Circuit.

Argued Dec. 15, 1949.

Decided Jan. 17, 1950.

Krause, Hirsch, Levin & Heilpern, New York City, for Debtor-Appellant; Elliot L. Krause and Sydney Krause, New York City, of counsel.

Milbank, Tweed, Hope & Hadley, New York City, for Claimant-Appellee; Sam-uel Ross Ballin and James G. Grady, New York City, of counsel.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The debtor, Whiteford Plastics Co., Inc., purchased two steam generators on January 19, 1948, and executed an instalment note for $4,862.20 and a conditional sale contract securing the note, both of which were assigned by the original vendor to the claimant Chase National Bank. Owing to inadvertence on the part of the bank the conditional sale contract was not filed with the Register of New York County until March 31, 1948. Under the New York Law, this neglect to file would render the contract void against lien creditors, though it would be good as between the bank and the Whiteford Plastics Co., Inc. New York Personal Property Law, Consol.Laws, c. 41, §§ 64, 65; Rivara v. James Stewart & Co., 241 N.Y. 259, 265, 149 N.E. 851.

On March 24, 1948, the debtor filed its petition for an arrangement, and listed the bank as a secured creditor in its schedules. The debtor then owed $4,743.54 on its note and was still in possession of the steam generators. Under date of June 16, 1949, it was stipulated between the bank and the debtor that the sum of $4,743.54, with interest from March 24, 1948, remained unpaid on the note. On May 20, 1948, the bank filed its proof of claim as a secured creditor. On September 16, 1948, the debtor proposed a plan of arrangement which provided for payment of 10% to unsecured creditors (in cash or pro rata shares of the debtor's common stock) and 33⅓% of the proceeds of a claim that it owned against Dictaphone Corporation, and in addition 33⅓% of the proceeds of its investment in Meadowlands, Inc., neither of which claims was to be disposed of without the prior approval of the creditors' committee. In a petition filed in the District Court under date of September 30, 1948, the debtor alleged that the bank's security was invalid and prayed that the

584

court determine that the conditional sale contract was void and adjudge that the bank was an unsecured creditor to the extent of its claim and should only participate in the assets distributable under the arrangement as an unsecured creditor. While the debtor's petition was pending and before it was decided, the plan of arrangement was confirmed.

■ The confirmation of the plan of arrangement was binding on all parties in the absence of fraud and under Section 386 of Chapter XI, 11 U.S.C.A. § 786, the arrangement could only be attacked for fraud and within six months after confirmation. This was not done. The debtor now insists that the petition to avoid the conditional sale should prevail because of the provisions of Section 342, 11 U.S.C.A. § 742, reading as follows: "When no receiver or trustee is appointed, the debtor shall continue in possession of his property and shall have all the title and exercise all the powers of a trustee appointed under the title, subject, however, at all times to the control of the court and to such limitations, restrictions, terms, and conditions as the court may from time to time prescribe."

■■ A trustee in bankruptcy is armed with all the rights of a lien creditor and under Section 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, can set aside the conditional sale contract on behalf of creditors. The debtor insists that under the precise words of Section 342, supra, he possesses the same rights as a trustee in bankruptcy. Such rights, however, as the referee held, are "subject * * * at all times to the control of the court and to such limitations, restrictions, terms, and conditions as the court may from time to time prescribe." The referee found that the steam generators had contributed nothing to the confirmation of the arrangement, and that in such circumstances the validity of the contract of conditional sale as between the parties should be recognized where the rights of creditors were not involved. We cannot see that the rights of creditors were involved in the case at bar, and hold that under the circumstances the referee was justified in holding the lien

of the bank valid and treating the latter as a secured creditor.

■ So far as the record discloses, the creditors were never informed of the fact that the conditional sale contract was void as to a lienholder prior to the motion of the debtor to set the lien aside shortly before the arrangement came up for confirmation. No creditor then or since appears to have objected to the plan because it did not include the value of the generators, or for any other reasons. The debtor never contributed or offered to contribute this value to the plan and now seeks to obtain it purely for its own benefit. This we think it cannot do. In our opinion the bank, which had a good secured claim as against the debtor, can still hold it where the petition to avoid the sale is not in the interest of the general creditors. This seems in accord with the holding of the Court of Appeals for the Seventh Circuit in the case of In re J. C. Winship Co., 120 F. 93, where a bankruptcy receiver attacked the lien of an unfiled chattel mortgage for the benefit of a bankrupt who had entered into a composition with his unsecured creditors. The court said, 120 F. at page 96: "It would be mockery of justice to say that the alleged bankrupt may claim through and in the right of creditors whose debts have been paid and discharged; that he may avoid a transaction, valid as to himself but voidable as to creditors, in the right of non-existing creditors."

The principles governing the rights of a secured creditor after a composition would seem to be applicable to an arrangement like the present, particularly where the creditors have received cash or stock for their claims, and there is no reason to safeguard their rights further. Our decision in the case of In re Martin Custom Made Tires Corp., 108 F.2d 172, involving a corporate reorganization under Section 77B, 11 U.S.C.A. § 207, pointed in the same direction. The provisions of 77B, sub. c (11), 48 Stat. 911 are substantially the same as those of Section 342 of Chapter XI. In that case the debtor of an insolvent corporation was allowed to attack an unfiled chattel mortgage, but we indicated that the chattel mortgagee could

still assert his rights under the mortgage if the other creditors had been satisfied.

The contention of the appellant that the debtor was really contributing the value of the steam generators to the creditors when offering the plan of reorganization which they finally accepted seems without substance. The debtor certainly did not intend to give the creditors the benefit of any such value when it sought to set aside the conditional sale and appropriate the generators to its own use.

We may add that if any persons can be thought to have better rights to a lien on the steam generators than the bank, they would be the creditors and not the debtor. But the creditors have accepted an arrangement which has been confirmed, and seem to us to have no standing to attack the arrangement indirectly, after they have accepted it.

The order of the District Court confirming the referee is in all respects affirmed.

CLARK, Circuit Judge, dissenting.

Certain propositions are, I think, to be regarded as accepted, viz., that the debtor in possession under an arrangement proceeding, like any other trustee, must act to secure what property it can for the creditors; and this, under settled law, would include property described in an invalid conditional bill of sale. We may also properly add that the debtor will not be permitted to misuse this fiduciary position merely for its own ends to evade just obligations. Then we must note the fact, which I believe is here crucial, namely, as specifically found by the referee, that the assets were insufficient to pay the general creditors in full. Finally the referee's statement that these assets had contributed nothing to the confirmation of the arrangement is clearly his own legal conclusion from the known facts, without other and separate basis in the evidence. We do know, of course, that the plan was offered before the debtor's attack upon the conditional bill of sale; but that attack came, and the full hearing upon it was held, substantially prior to the confirmation of the plan.

Under these circumstances it was surely the clear duty of the debtor to secure this property for the general creditors and of the referee to see that it did so. Hence if the property did not figure in the formation of the plan, it should have been made to do so. In fact, In re Martin Custom Made Tires Corp., 2 Cir., 108 F.2d 172, required the setting aside of the security here. There the court pointed out that the validity of the security becomes of prime importance where some creditors must be satisfied with less than full payment, and on analogous facts held that the entire claim must be treated as unsecured where the security was void as to other creditors.

Of course in such cases the claimant may reassert his security if, after other creditors are satisfied, some of the secured property is left unaffected by the plan and some sum is still due him. That at best seems unlikely; when other creditors are paid, the claimant will be also. I refer to it merely to point out that the bankruptcy court has ample powers to see that avoidance of the security shall not result in a windfall for the debtor, but shall inure to the benefit of the general creditors, for whom it was intended. Here, however, the creditors have not been satisfied; and since the debtor in possession succeeds to the unchallenged right of the creditors to have the security cancelled, its petition should have been granted. See 8 Collier on Bankruptcy § 6.32, pp. 813-818, 14th Ed. 1941.

My brothers seemingly do not controvert these propositions, but are moved to overlook whatever error there may have been because of their view that the plan cannot now be reframed to include the property which should thus have been recovered. But this requires the commission of another error, namely, the sanctioning of the return of the property to the one who is not entitled by law to it while there remain unpaid general creditors. I do not believe this should be our course; rather we should remand the case to the referee to do what now can be done to carry out the applicable principles of law. For my part I am not convinced (a) that

the legal conclusion that the property did not contribute to the confirmation is necessarily sound in view of the time elements stated above or (b) that in any event nothing can now be done to correct errors which may have occurred, in view of the broad equity powers of the bankruptcy court, including that to "reopen estates for cause shown." Bankruptcy Act § 2, subd. a(8), 11 U.S.C.A. § 11, subd. a(8). It is to be noted that these parties now before us cannot have acquired any vested rights in the confirmation, since their interests have been continuously in litigation; and it is only the vendor, and certainly not the general creditors, who can or will complain of any change in favor of the latter now. Indeed, I am not sure how far an appellate court, faced with what (I submit) is a plain error, should go outside the record to affirm for fear that the error may have caused other consequences which are undesirable; this may easily lead to action upon what may be only a guess as to the inclination of the imagined equities. But I need not speculate that far to support my own view that we ought to reverse and remand.